IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LOCAL 860 LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, *On Behalf of Itself and Its Members*, | CASE NO. 1:20-CV-02714 |
| | JUDGE PAMELA A. BARKER |
| Plaintiff, | |
| -vs- | |
| | MEMORANDUM OF OPINION AND ORDER |
| TEREASE Z. NEFF, et al., | |
| Defendants. | |

This matter comes before the Court upon the Motion to Dismiss of Defendants Terease Z. Neff ("Ms. Neff"), the Honorable Thomas F. O'Malley ("Judge O'Malley"), and the Cuyahoga County Common Pleas Court, Juvenile Division (the "Juvenile Court") (collectively, "Defendants"). (Doc. No. 4.)  Plaintiff Laborers' International Union of North America, Local 860 ("Local 860") filed a brief in opposition to Defendants' Motion to Dismiss on February 18, 2021, to which Defendants replied on March 11, 2021.  (Doc. Nos. 6, 9.)  For the following reasons, Defendants' Motion to Dismiss (Doc. No. 4) is GRANTED.

I.  **Background**

a.  **Factual Allegations**

Ms. Neff is the Court Administrator of the Juvenile Court, and, in this role, she is responsible for all Juvenile Court operations, including the operations of the detention center, management, and staff.  (Doc. No. 1 at ¶ 8.)  Judge O'Malley is the Juvenile Court's Administrative Judge and acts as the administrator of the Juvenile Court's subdivisions and departments.  (*Id.* at ¶ 9.)

In 2012, Local 860 became the exclusive bargaining representative for two bargaining units of Juvenile Court employees.  (*Id.* at ¶¶ 11-14.)  Subsequently, Local 860 and the Juvenile Court agreed to two collective bargaining agreements—the Courtside CBA and the Detention CBA (collectively, the "CBAs")—for the period of 2013 to 2015.  (*Id.* at ¶¶ 10-13, 19-20.)  The relationship between Local 860 and the Juvenile Court remained strictly contractual, however, as the employees working under both CBAs are not covered by either the National Labor Relations Act or the Ohio Collective Bargaining Act.  (*Id.* at ¶ 18.)

Local 860 and the Juvenile Court also later successfully negotiated new CBAs for the period of 2016 to 2019.  (*Id.* at ¶ 20.)  Specifically, the CBAs provided that they would remain in effect until December 31, 2019.  (*Id.* at ¶ 21.)  The CBAs also contained the following language:

> [T]he Court agrees to recognize the Union and abide by the terms of this Agreement until such time as a successor agreement is negotiated between the parties, the Union disclaims interest, or the employees elect to decertify the Union as their exclusive bargaining representative upon the expiration of this Agreement.

(Doc. No. 1-1 at 5; Doc. No. 1-2 at 5.)

In 2019, Local 860 and the Juvenile Court began negotiations over successor contracts to the CBAs.  (Doc. No. 1 at ¶ 22.)  The parties continued to negotiate through late 2020, but they were unable to reach an agreement.  (*Id.* at ¶¶ 22-40.)  During this time, the Juvenile Court generally abided by the terms of the old CBAs, although there were several breaches that were remedied through the grievance process or otherwise resolved.  (*Id.* at ¶ 41.)

However, on December 1, 2020, the Juvenile Court, at the direction of Ms. Neff and Judge O'Malley, informed its employees that there was no longer an agreement between the Juvenile Court and Local 860 and that the CBAs were no longer in effect.  (*Id.* at ¶ 42.)  As a result, Local 860's members lost the contractual rights and protections relative to their employment that were contained

2

in the CBAs.  For example, the Juvenile Court would no longer abide by the CBAs' terms regarding discipline, safety and health responsibilities, seniority rights, job bidding and transfer rights, increases for promotions, and time-off.  (*Id.* at ¶ 44.)  Instead, the Juvenile Court indicated it would treat Local 860's members as non-union employees.  (*Id.* at ¶ 45.)  The Juvenile Court also declared that it would no longer be deducting and remitting voluntary union dues, removed Local 860's bulletin boards, and informed Local 860 that it would no longer be processing grievances.  (*Id.* at ¶¶ 43-50.)

On the same day as its announcement that the CBAs were no longer operative, the Juvenile Court, through Judge O'Malley in his official capacity as Administrative Judge, filed two complaints against Local 860 in the Common Pleas Court of Cuyahoga County, Ohio, seeking declaratory judgments that both CBAs were void and/or expired.  (Doc. Nos. 4-1, 4-2.)[1]  In support, the Juvenile Court argued that the CBAs had expired according to their unambiguous terms, that the CBAs were illusory and void due to a lack of consideration, and that the perpetual nature of the CBAs violated Ohio public policy.  (Doc. No. 4-1 at 9-11; Doc. No. 4-2 at 9-11.)  In response, Local 860 filed counterclaims based on the Juvenile Court's alleged breach of the CBAs, moved to compel the arbitration of its grievances, and requested its own declaratory judgments regarding the CBAs.  (Doc. Nos. 4-3, 4-4.)  The state court actions, which have been consolidated, are still pending as of the date of this opinion.

---

[1] On a motion to dismiss, courts "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Thus, the Court may consider court filings from the state court action between the parties.

3

### b. Procedural History

On December 4, 2020, Local 860 filed a Complaint in this Court against Defendants, including Ms. Neff and Judge O'Malley in both their personal and official capacities,[2] seeking damages and injunctive relief pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Local 860 contends that Defendants' unilateral termination of the CBAs violated the Contracts Clause, constituted an unconstitutional taking without just compensation, deprived it of its property without due process, and violated its rights under the First Amendment. (*Id.* at ¶¶ 53-76.) In response, on January 19, 2021, Defendants filed a Motion to Dismiss, requesting that all of the counts in Local 860's Complaint be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 4.) Local 860 filed a brief in opposition to Defendants' Motion to Dismiss on February 18, 2021, to which Defendants replied on March 11, 2021. (Doc. Nos. 6, 9.)

## II. Standard of Review

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative

---

[2] The Complaint is not clear as to whether the counts set forth are brought against Ms. Neff and Judge O'Malley in both their personal and official capacities. Counts I and III allege Ms. Neff and Judge O'Malley were acting under color of state law, while Count II alleges that they were acting under color of state law, as well as outside the scope of their official capacities. (Doc. No. 1 at ¶¶ 57, 65, 67, 75.) However, the prayer for relief seeks damages against all Defendants with respect to each count and against Ms. Neff and Judge O'Malley in their individual capacities. (*Id.* at Pg. 13.) In addition, in their briefing on Defendants' Motion to Dismiss, the parties address the claims against Ms. Neff and Judge O'Malley in both their personal and official capacities. (Doc. No. 6 at 27-29; Doc. No. 9 at 18-20.) Thus, the Court will treat the Complaint as setting forth all counts against Ms. Neff and Judge O'Malley in both their personal and official capacities.

4

level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

III.     **Analysis**

    a.  **Sovereign Immunity and the Eleventh Amendment**

Before reaching the merits of Local 860's claims, the Court will first address Defendants' argument that they are entitled to immunity under the Eleventh Amendment.   Specifically, Defendants assert that sovereign immunity precludes Local 860's claims against the Juvenile Court, as well as Ms. Neff and Judge O'Malley in their official capacities, because the Juvenile Court is an arm of the state of Ohio.  (Doc. No. 4 at 11-14; Doc. No. 9 at 15-18.)  In opposition, Local 860 asserts that the Juvenile Court is not an arm of the state because any money judgment against it would be paid by Cuyahoga County, not the state treasury.  (Doc. No. 6 at 25-28.)  Additionally, Local 860 argues that Eleventh Amendment immunity does not bar its requests for injunctive relief against Ms. Neff and Judge O'Malley in their official capacities.  (*Id.* at 28.)  The Court finds that the Juvenile Court is an arm of the state, and, therefore, Local 860's claims against the Juvenile Court are barred in their entirety, and its claims against Ms. Neff and Judge O'Malley in their official capacities are barred to the extent that they seek monetary relief.

Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments by citizens of another state, foreigners or its own citizens."  *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citation omitted).  "The amendment also bars suits for monetary relief against state officials sued in their official capacity."  *Id.*  However, it "does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief."  *Id.*; *accord Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("[T]he Supreme Court announced an exception to Eleventh Amendment sovereign immunity in *Ex parte Young* for claims for injunctive

6

relief against individual state officials in their official capacities.").  Nor does Eleventh Amendment immunity extend to counties and similar municipal corporations.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

Thus, a threshold question in this case is whether the Juvenile Court should be considered part of the state—in which case it and Ms. Neff and Judge O'Malley in their official capacities are entitled to immunity—or part the county in which it sits—in which case they are not entitled to immunity. The Sixth Circuit addressed the question of whether an Ohio common pleas court is an arm of the state in *Mumford v. Basinski*, which involved the Lorain County Common Pleas Court Domestic Relations Division.  105 F.3d 264, 266, 269-70 (6th Cir. 1997).  Based on numerous aspects of the composition of Ohio common pleas courts and their divisions—including the fact they are created by the Ohio Constitution; that the Ohio Constitution vests supervisory authority over all courts of Ohio and the authority to promulgate rules for such courts in the Ohio Supreme Court; that the Ohio Constitution dictates standards controlling the election, residency, tenure, compensation, and eligibility of every Ohio common pleas judge; that state law delineates the jurisdiction of common pleas courts; that state law vests the authority to hire personnel to the courts themselves; and that state law compels county governments to provide support for the operation of the common pleas courts within their borders—the Sixth Circuit concluded that "an Ohio common pleas court is *not* a segment of county government, but an arm of the state for purposes of section 1983 liability and Eleventh Amendment immunity analyses."  *Id.* at 268-69.

The Sixth Circuit later questioned the validity of *Mumford*'s holding in light of intervening Supreme Court precedent that indicated that the question of who pays a damages judgment against an entity is the most important factor in deciding whether an entity is an arm of the state, which the

7

decision in *Mumford* did not address. *Alkire v. Irving*, 330 F.3d 802, 811-12 (6th Cir. 2003). Nonetheless, even after *Alkire*, the Sixth Circuit and courts in the Sixth Circuit have continued to hold that common pleas and municipal courts are arms of the state of Ohio even though the state does not pay for money judgments against them. For example, in *Ward v. City of Norwalk*, the Sixth Circuit held that the Norwalk Municipal Court was an arm of the state, explicitly finding that "*Alkire*'s emphasis on the source-of-payment factor does not change the conclusion that the Norwalk Municipal Court is an arm of the state for § 1983 and Eleventh Amendment purposes." 640 F. App'x 462, 465 (6th Cir. 2016). Similarly, in *Ortiz v. Holmes*, the court concluded that the Mahoning County Juvenile Court was an arm of the state because "the importance of the county's responsibility for any judgment in this case is outweighed by the other factors that clearly counsel in favor of sovereign immunity." 157 F. Supp. 3d 692, 702 (N.D. Ohio 2016); *see also Hunter v. Hamilton Cty.*, No. 1:15-CV-540, 2016 WL 11463840, at *6 n.5 (S.D. Ohio May 5, 2016) ("[T]he Sixth Circuit has not overruled its prior decisions finding state courts in Ohio to be arms of the state for purposes of Eleventh Amendment immunity."), *report and recommendation adopted*, 2016 WL 4836810 (S.D. Ohio Sept. 15, 2016).

Thus, the Court finds unpersuasive Local 860's argument that the Juvenile Court is not entitled to immunity because its expenses are paid by the county. Rather, this Court agrees with the reasoning of the authority cited above holding that the other aspects of the composition of Ohio common pleas courts support the conclusion that they are arms of the state—not the part of the county in which they sit. Thus, the Court finds that the Juvenile Court is an arm of the state for Eleventh Amendment immunity purposes. Accordingly, Local 860's claims against the Juvenile Court are barred in their entirety, and all claims against the Juvenile Court are dismissed. In addition, Local

860's claims for monetary relief against Ms. Neff and Judge O'Malley in their official capacities are barred and dismissed.

However, the Court agrees with Local 860 that its claims for prospective injunctive relief against Ms. Neff and Judge O'Malley in their official capacities are not precluded by the Eleventh Amendment.  *See Diaz*, 703 F.3d at 964.  Thus, Local 860's claims for injunctive relief against Ms. Neff and Judge O'Malley in their official capacities and the claims against them in their personal capacities are not barred by the Eleventh Amendment.

### b.  Contracts Clause

In Count I of its Complaint, Local 860 asserts that Defendants' unilateral termination of the CBAs violated the Contracts Clause in Article I, Section 10 of the Constitution.  (Doc. No. 1 at ¶¶ 53-61.)  Ms. Neff and Judge O'Malley argue that dismissal of Local 860's Contracts Clause claim is warranted because the Sixth Circuit has held that an alleged violation of the Contracts Clause does not give rise to a cause of action under 42 U.S.C. § 1983.  (Doc. No. 4 at 7-10.)  Alternatively, they contend that Local 860's claim fails on the merits because the Juvenile Court is not a legislative body and there was no change in the law that impaired the contracts at issue.  (*Id.* at 10-11.)  In response, Local 860 admits that Sixth Circuit precedent provides that a Contracts Clause violation cannot give rise to a cause of action under § 1983, but argues that the Court should nonetheless recognize a cause of action in this case and that Local 860 has sufficiently pled a violation.  (Doc. No. 6 at 11-16.)  Because controlling Sixth Circuit precedent precludes Local 860's claim, the Court finds that dismissal of Count I is appropriate.

The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  The Sixth Circuit has definitively ruled "that an

alleged Contracts Clause violation cannot give rise to a cause of action under § 1983." *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017).  Although other circuit courts that have addressed the issue are split as to whether a violation of the Contracts Clause may support a claim under § 1983, *see Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 413 n.2 (3d Cir. 2020), this Court is bound by the Sixth Circuit's decision in *Kaminski*.  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW), AFL-CIO v. McClelland*, No. 20-12433, 2020 WL 5834750, at *3 (E.D. Mich. Oct. 1, 2020) ("[T]his court is bound by *Kaminski*."); *see also Chinn v. Jenkins*, No. 3:02-cv-512, 2018 WL 488159, at *4 (S.D. Ohio Jan. 19, 2018) ("[T]here is a rule of law about published Sixth Circuit opinions: they are controlling binding precedent for future Sixth Circuit panels and for all district courts in the circuit.").

Accordingly, Local 860's claims pursuant to § 1983 premised on Ms. Neff's and Judge O'Malley's alleged violations of the Contracts Clause must be dismissed.  Local 860's contention that *Kaminski* is wrongly decided and its citations to the decisions of other circuit courts that have disagreed with *Kaminski* are unpersuasive in light of the binding nature of the Sixth Circuit's decision, which has not been subsequently overruled.  In addition, Local 860's reliance on *Welch v. Brown*, 551 F. App'x 804 (6th Cir. 2014)—which found that the plaintiffs were likely to succeed on their § 1983 claims based on alleged violations of the Contracts Clause in the preliminary injunction context—is misplaced, as *Welch* was decided before *Kaminski* and is an unpublished decision that does not carry the same precedential weight.  *See, e.g.*, *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002) ("It is well-established law in this circuit that unpublished cases are not binding precedent.").

Therefore, Count I, to the extent that it remained against Ms. Neff and Judge O'Malley in their official and individual capacities, is dismissed.[3]

### c. Takings Clause

In Count II of the Complaint, Local 860 alleges that Defendants' unilateral termination of the CBAs constituted an unconstitutional taking of the rights contained therein without just compensation. (Doc. No. 1 at ¶¶ 62-72.) Ms. Neff and Judge O'Malley argue that this claim should be dismissed because the CBAs are void or no longer enforceable and because Local 860 has not alleged that any cognizable property interests have been taken since there are no allegations that any members of the union have been terminated, discriminated against, denied paid sick leave, or otherwise harmed. (Doc. No. 9 at 8.) With respect to the takings claims against them in their personal capacities, Ms. Neff and Judge O'Malley also contend that the claims should be dismissed based on the doctrine of qualified immunity because their actions did not violate any clearly established constitutional rights. (*Id.* at 18-20; Doc. No. 4 at 19-21.) Local 860 argues that dismissal is not appropriate because it has adequately alleged that Defendants deprived it and its members of cognizable property interests in the rights provided by the CBAs without just compensation and that the protections of qualified immunity are inapplicable because the individual Defendants knew their conduct violated the Constitution. (Doc. No. 6 at 16-20, 28-29.) The Court finds that Local 860's takings claims against Ms. Neff and Judge O'Malley in both their official and personal capacities should be dismissed.

---

[3] Because Local 860's Contracts Clause claim is precluded by *Kaminski*, the Court need not consider Ms. Neff's and Judge O'Malley's arguments regarding their entitlement to qualified immunity in their individual capacities with respect to this claim.

11

First, as noted above, Local 860's claims against Ms. Neff and Judge O'Malley in their official capacities are not precluded by sovereign immunity under the Eleventh Amendment only to the extent that Local 860 seeks prospective injunctive relief. However, a takings claim under the Fifth Amendment cannot support a request for injunctive relief if there is an adequate state process available for obtaining compensation for the taking. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2176 (2019) ("As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."). In those circumstances, courts have consistently dismissed claims for injunctive relief based on a Fifth Amendment takings claim. *E.g.*, *Daugherty Speedway, Inc. v. Freeland*, No. 4:20-CV-36-PPS, 2021 WL 633106, at *3 (N.D. Ind. Feb. 17, 2021) (dismissing claims for injunctive relief because "[t]he appropriate remedy for a taking under the Fifth Amendment is compensation in the form of damages and not injunctive relief"); *Culinary Studios, Inc. v. Newsom*, No. 1:20-CV-1340 AWI EPG, 2021 WL 427115, at *14 (E.D. Cal. Feb. 8, 2021) ("[T]o the extent that Plaintiffs seek declaratory or injunctive relief under the takings claim, such relief is inappropriate."); *Hund v. Cuomo*, 501 F. Supp. 3d 185, 206 (W.D.N.Y. 2020) (dismissing the injunctive-relief portion of the plaintiff's takings claim because "New York law provides a procedure through which he can obtain compensation for any taking").

Here, there is no indication that Ohio does not provide a process for obtaining just compensation for a taking. Indeed, the Sixth Circuit has recognized that "Ohio's statutory mechanism for obtaining compensation to remedy a Takings Clause violation is reasonable, certain, and adequate." *Ladd v. Marchbanks*, 971 F.3d 574, 581 n.5 (6th Cir. 2020). Further, the Sixth Circuit has held that a taking based on the breach of collective bargaining agreements "can be vindicated through a suit in contract upon the disputed collective-bargaining agreements." *Kaminski*, 865 F.3d

12

at 349.  Accordingly, to the extent that Local 860 seeks injunctive relief based on its takings claim, that relief is unavailable.  Therefore, the remaining aspect of Local 860's takings claim against Ms. Neff and Judge O'Malley in their official capacities for prospective injunctive relief must be dismissed.  To the extent that Local 860 seeks injunctive relief against Ms. Neff and Judge O'Malley in their personal capacities, the takings claim also fails for the same reason.

However, the Court still must assess Local 860's takings claims for damages against Ms. Neff and Judge O'Malley in their personal capacities.  Importantly, under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional right,' and 'the right was "clearly established" at the time of the challenged conduct.'"  *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  The Sixth Circuit "has cautioned that although qualified immunity claims should be resolved early, 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'"  *Mich. Interlock, LLC v. Alcohol Detection Sys., LLC*, 802 F. App'x 993, 1002 (6th Cir. 2020) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).  Nonetheless, dismissal based on qualified immunity at the pleadings stage may be appropriate under certain circumstances.  *See Kaminski*, 865 F.3d at 344 ("Nonetheless, certain immunity questions can still be resolved at the pleading stage with a sufficiently developed record."); *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) ("Despite liberal notice pleading standards, this circuit permits a reviewing court to dismiss under Fed.R.Civ.P. 12(b)(6) based on qualified immunity.").

To determine whether an official is entitled to qualified immunity, courts "apply a well-established two-prong test: (1) whether the facts, when taken in the light most favorable to the party

13

asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such 'that a reasonable official would understand that what he is doing violates that right.'"  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  These steps may be addressed in any order, and the defendant officer need only prevail on one of them to be granted qualified immunity.  *See Coffey v. Carroll*, 933 F.3d 577, 584 (6th Cir. 2019); *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

With regard to the second step, "clearly established" means that the law is so clear at the time of the incident that every reasonable officer would understand the unlawfulness of his conduct. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). As the Supreme Court recently explained:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam* ), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).  It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088.  Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.  The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ----, ----, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (*per curiam* ). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted).  A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034.

14

*Id.* at 589-90.  Thus, in evaluating whether a constitutional right was clearly established for purposes of qualified immunity, courts "must examine the *particular* situation that [the defendant officers] confronted and ask whether the law clearly established that their conduct was unlawful."  *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020).

Accordingly, to survive Defendants' Motion to Dismiss, Local 860 must plausibly allege not only that Defendants' actions constituted an unconstitutional taking, but that a reasonable official would have known that such actions violated Local 860's constitutional rights.  Generally, "[t]he Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (internal citation omitted).  The Sixth Circuit has established a two-part test to evaluate whether a governmental action constitutes a taking of private property without just compensation.  *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016).  "First, 'the court must examine whether the claimant has established a cognizable property interest for the purposes of the Just Compensation Clause.'"  *Id.* (quoting *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004)). "Second, 'where a cognizable property interest is implicated, the court must consider whether a taking occurred.'"  *Id.* (quoting *Coalition for Gov't Procurement*, 365 F.3d at 481).

Here, even assuming, *arguendo*, that the Juvenile Court's termination of the CBAs, at the direction of Ms. Neff and Judge O'Malley, constituted a taking of Local 860's and its members' property without just compensation, Ms. Neff and Judge O'Malley are entitled to qualified immunity because their actions in this context were not clearly unlawful.  Specifically, Local 860's allegations do not demonstrate that Ms. Neff and Judge O'Malley deprived Local 860 of a clearly established

15

property right.  To wit, Local 860's takings claim is based entirely on the alleged wrongful deprivation of rights contained in the CBAs.  (*See* Doc. No. 1 at ¶¶ 63-64; Doc. No. 6 at 17-18.)  However, Ohio's Public Employees Collective Bargaining Act, which extended collective bargaining rights to public employees, specifically excludes court officers and employees from its scope.  *State ex rel. Ohio Council 8, Am. Federation of State, Cty. and Mun. Employees, AFL-CIO v. Spellacy*, 17 Ohio St.3d 112, 114-15 (1985); Ohio Rev. Code § 4117.01(C)(8).  As a result, the decision to recognize collective bargaining within Ohio's courts is a matter of judicial discretion.  *Spellacy*, 17 Ohio St.3d at 115; *see also* Ohio Rev. Code § 4117.03(C).

Moreover, the stated term of the most recent CBAs between Local 860 and the Juvenile Court expired on December 31, 2019, after which the parties continued to negotiate for nearly a year before Defendants informed Local 860 that they would no longer adhere to the CBAs.  As a result, although the CBAs do include provisions that the parties would continue to abide by their terms until a successor agreement was negotiated or until the occurrence of certain other conditions, it is far from clear that the CBAs remained in effect at the time of Defendants' unilateral termination.  Indeed, that issue is currently being litigated in the state court action between the Juvenile Court and Local 860 in which the Juvenile Court has argued that the CBAs have expired according to their unambiguous terms, that the CBAs were illusory and void due to a lack of consideration, and that the perpetual nature of the CBAs violate Ohio public policy.  (Doc. No. 4-1 at 9-11; Doc. No. 4-2 at 9-11.)

Thus, while Local 860 may ultimately prevail on the issue of whether the CBAs were valid and in effect at the time of the termination, the belief by Ms. Neff and Judge O'Malley that the CBAs were not valid or effective and that they were not depriving Local 860 or its members of any

16

cognizable property interests by announcing their termination was not unreasonable.[4] Nor has Local 860 provided any support for its view that Ms. Neff and Judge O'Malley are assumed to know the legality of their actions with absolute accuracy simply because they are both lawyers and Judge O'Malley is a judge. Even if mistaken as to the validity of the CBAs and whether Local 860 retained cognizable property rights therein, the individual Defendants did not act unreasonably or violate any clearly established rights when terminating the CBAs. Consequently, Ms. Neff and Judge O'Malley are entitled to qualified immunity on Local 860's takings claims for damages against them in their personal capacities, and the Court will grant the Motion to Dismiss in that respect.

### d. Procedural Due Process

Count II of Local 860's Complaint also includes a claim under the Due Process Clause based on Defendants' alleged failure to provide adequate procedures, such as notice and an opportunity to be heard, prior to the termination of the CBAs. (*See* Doc. No. 1 at ¶¶ 62-72.) Ms. Neff and Judge O'Malley assert this claim should be dismissed because their decision to cease recognizing the union and the CBAs was not sufficiently individualized to trigger due process protections. (Doc. No. 4 at 14-15.) They also argue that Local 860's due process claim fails because the availability of a state law breach of contract claim is an adequate procedural protection for the deprivation of property alleged in this case. (Doc. No. 9 at 14-15.) Local 860 opposes dismissal and argues that the contested actions were sufficiently individualized to warrant due process protections because they were targeted toward two CBAs specifically affecting Local 860 and its members. (Doc. No. 6 at 20-22.) Upon review, the Court concludes that Local 860's due process claims against Ms. Neff and Judge

---

[4] To be clear, the Court expresses no opinion as to the merits of the parties' state court claims. Instead, the Court only finds that the belief that the CBAs did not provide cognizable property rights because the CBAs were either invalid or expired was not unreasonable.

17

O'Malley in both their official and individual capacities should be dismissed based on the availability of a state law breach of contract claim to remedy the alleged deprivation of property.

"The Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 830 (6th Cir. 2009). "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). "To establish a procedural due process violation, Plaintiff must demonstrate that 1) it possessed a constitutionally protected property or liberty interest; 2) it was deprived of that interest; and 3) the state did not afford it adequate procedural rights prior to depriving it of that interest." *Taylor Acquisitions*, 313 F. App'x at 830.

Generally, however, "a claim for a due-process violation does not lie where the thrust of the plaintiffs' argument is simply breach of contract." *Kaminski*, 865 F.3d at 348. As explained by the Sixth Circuit:

> "This court has held that 'a state breach of contract action may ... provide an adequate remedy for some deprivations of a contractually created property interest.' " *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed.Appx. 826, 831 (6th Cir. 2009) (quoting *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988)). Because a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats the due-process claim. As the *Ramsey* court explained, "it is neither workable nor within the intent of [§] 1983 to convert every breach of contract claim against a state into a federal claim." *Ramsey*, 844 F.2d at 1273 (citations omitted). Consequently, "[a] state breach of contract action is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties." *Ibid.*

*Id.*

Thus, in *Kaminski*, the Sixth Circuit held that the plaintiffs' due process claim based on the termination and replacement of certain retiree health care benefit provisions in collective bargaining

18

agreements should be dismissed.  *Id.*  The court held the plaintiffs had not made out a viable due-process claim as a result of their failure "to explain why a state breach-of-contract claim against the City of Lincoln Park is insufficient to safeguard their contractual property rights."  *Id.*  Similarly, in *Taylor Acquisitions*, the Sixth Circuit held that the plaintiff failed to set forth a procedural due process violation based on the defendant city's termination of a purchase agreement because a breach of contract action would be an adequate procedural protection.  313 F. App'x at 832; *see also Superior Communications v. City of Riverview, Michigan*, 881 F.3d 432, 446 (6th Cir. 2018) (holding the plaintiff had not made out a viable due-process claim when its "purported property right is derived from the License Agreement and is therefore, at its core, simply a claim for breach of contract").

In the instant matter, Local 860's due process claim is based on the deprivation of property rights that arose from the CBAs.  (Doc. No. 6 at 17-18, 21.)  For example, Local 860 asserts that it and its members had cognizable property interests as a result of the CBAs' provisions relating to just cause protections, processes for dues deductions, wages, seniority rights, and overtime rights.  (*Id.*)  Because Local 860's purported property rights are derived from the CBAs, its claim is, at its core, simply a claim for breach of contract.  The only difference between this case and a typical breach of contract case is that the Juvenile Court happened to be one of the contracting parties.  Consequently, a breach of contract action—which Local 860 has already initiated in state court in response to the Juvenile Court's declaratory judgment actions—is an adequate procedural protection for the termination of the CBAs, and Local 860 has failed to set forth a viable due process claim.

Accordingly, the due process claim contained in Count II, to the extent that it remained against Ms. Neff and Judge O'Malley in their official and individual capacities, is dismissed.[5]

### e.  First Amendment Retaliation

Finally, in Count III of its Complaint, Local 860 alleges that Defendants retaliated against it and its members for exercising their rights to associate for their collective good and mutual protection and to petition the government for the redress of wrongs under the First Amendment.  (Doc. No. 1 at ¶¶ 73-76.)  Ms. Neff and Judge O'Malley contend Local 860's retaliation claim fails because there is no constitutional right to collectively bargain and Local 860 and its members therefore have not engaged in any protected activity, because Ms. Neff and Judge O'Malley did not take any adverse actions against Local 860 and its members, and because Local 860's conclusory allegations that any adverse action was in response to protected activity are insufficient.  (Doc. No. 4 at 15-19; Doc. No. 9 at 8-13.)  In response, Local 860 argues that it has sufficiently alleged each element of a First Amendment retaliation claim based on its allegations that Ms. Neff and Judge O'Malley failed to bargain in good faith and eliminated all union and employee rights under the CBAs in retaliation for Local 860's and its members' exercise of their First Amendment rights.  (Doc. No. 6 at 22-25.)  Upon review of the parties' arguments, the Court concludes that Local 860 has failed to state a claim for a violation of the First Amendment.

"In order to prove a claim for retaliation, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness

---

[5] Because Local 860 has not adequately alleged a due process violation, the Court need not consider Ms. Neff's and Judge O'Malley's arguments regarding their entitlement to qualified immunity in their individual capacities with respect to this claim.

from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

A "public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so." *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979); *see also Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 251 (6th Cir. 2007) ("[A] government employer cannot take adverse action against an employee solely because that employee is a union member."). "But the First Amendment is not a substitute for the national labor relations laws." *Smith*, 441 U.S. at 464. Indeed, the First Amendment does not impose any affirmative obligation on the government to respond to or recognize a union and bargain with it. *Id.* at 465.

Applying these principles, in *Smith*, the Supreme Court addressed a complaint by a union and several of its members alleging that a state highway commission violated the First Amendment because it would not consider employee grievances submitted by the union and instead required employees to submit their grievances directly to their designated employer representatives. *Id.* at 463-64. The Supreme Court found that because there was no claim that the state highway commission "prohibited its employees from joining together in a union, or from persuading others to do so, or from advocating any particular ideas," there was "no claim of retaliation or discrimination proscribed by the First Amendment." *Id.* at 465. Rather, the Supreme Court concluded: "Far from taking steps to prohibit or discourage union membership or association, all that the Commission has done in its challenged conduct is simply to ignore the union. That it is free to do." *Id.* at 466; *see also Arkansas State Highway Emp. Local 1315 v. Kell*, 628 F.2d 1099, 1102 (8th Cir. 1980) (holding that "the First

21

Amendment does not impose any duty on a public employer to affirmatively assist, or even to recognize a union" and finding that no violation occurred when the defendant stopped withholding dues from the wages of union members); *Indianapolis Educ. Ass'n v. Lewallen*, No. 17808, 1969 WL 11147, at *2 (7th Cir. Aug. 13, 1969) ("The refusal of the defendants-appellants to bargain in good faith does not equal a constitutional violation of plaintiffs-appellees' positive rights of association, free speech, petition, equal protection, or due process.").

Likewise, here, Local 860 has not alleged that Ms. Neff and Judge O'Malley retaliated against it or its members by prohibiting Juvenile Court employees from joining together in a union, from persuading others to do so, or from advocating any particular ideas.  Instead, in support of its retaliation claim, Local 860 points to Ms. Neff's and Judge O'Malley's failure to bargain in good faith and the loss of rights resulting from the termination of the CBAs, such as the fact that union dues are no longer deducted from employees' wages, that stewards and union representatives are no longer recognized, that Local 860 no longer has access to bulletin boards, and that seniority rights and other employee protections have been eliminated.  (Doc. No. 6 at 23-25.)  However, the alleged loss of rights all stem from the fact that the Juvenile Court, through Ms. Neff and Judge O'Malley, has chosen to no longer recognize Local 860 and the previously negotiated CBAs, which it is under no constitutional obligation to do.  Because Local 860's retaliation claim is based on the decision of Defendants to ignore the union, not actions that target Local 860 or its members for adverse treatment based on their union affiliation, the Court finds that dismissal is warranted.  Therefore, to the extent

that Count III remained against Ms. Neff and Judge O'Malley in their official and individual capacities, it is dismissed.[6]

## IV.  Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 4) is GRANTED.

**IT IS SO ORDERED.**


      *s/Pamela A. Barker*

      PAMELA A. BARKER

Date:  June 17, 2021      U. S. DISTRICT JUDGE

---

[6] Because Local 860 has not adequately alleged a First Amendment retaliation claim, the Court need not consider Ms. Neff's and Judge O'Malley's arguments regarding their entitlement to qualified immunity in their individual capacities with respect to this claim.

23